# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

Carmen Bristol-Navarro, et al.,

    Plaintiffs,

        v.

Puerto Rico Department of Education, et al.,

    Defendant.

**Civil No. 14-1226 (SEC)**

## OPINION & ORDER

Carmen Bristol Navarro, in her capacity as mother and legal guardian of her disabled son (collectively, "Plaintiffs"), brings this action pursuant to the Individuals with Disabilities in Education Act, 20 U.S.C. §§ 1400 *et seq*. ("IDEA"), against the Puerto Rico Department of Education (the "DOE"). Plaintiffs seek to recover the attorney's fees incurred in litigating an administrative case filed to obtain an appropriate and free public education for the disabled minor. Pending before the Court is Plaintiffs' request for attorneys' fees and costs, and Defendants' opposition. See Docket ## 1, 18, 20. Plaintiff's request is **GRANTED**.

**I.    Analysis**

The IDEA empowers a district court, in its discretion, to award reasonable attorney's fees "as part of the costs to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B). This award should be "based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C). In adjudicating a request for fees under this statue, then, the Court must determine whether: (1) a party is in fact a

"prevailing party"; (2) the compensation sought is reasonable; and (3) if there are any additional but exceptional considerations that may require and upward or downward adjustment in the award. Hensley v. Eckerhart, 461 U.S. 424, 433-34 (1983). The party seeking attorneys' fees must submit evidence to support the hours and rates sought. Gonzalez v. P.R. Department of Education, 1 F.Supp. 2d 111,114 (D.P.R. 1998). Defendants do not dispute that Plaintiffs are a "prevailing party" within the meaning of the IDEA, and so the Court need only determine the amount of fees to which Plaintiffs' are entitled.

The First Circuit has endorsed the "lodestar" approach for purposes of determining whether the total amount sought is presumptively reasonable. In implementing this approach, the Court must determine the prevailing rate in the community for the type of legal work performed, accounting for "the qualifications, experience, and specialized competence of the attorneys involved." See Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 295 (1st Cir. 2001) (collecting cases); see 20 U.S.C. § 1415 (i)(3)(F). The Court must then multiply this rate across the number of hours efficiently spent by counsel in litigating the case; that is, the number of hours logged minus any "duplicative, unproductive, or excessive" entries. Id.

i. The Prevailing Rate

In the administrative proceedings, Plaintiffs were represented by two attorneys: Daniel Vilarini Baquero and Michelle Silvestriz Alejandro. Plaintiffs posit that an hourly rate of $150 is reasonable for counsel of their caliber, while Defendants counter that $135 is the more appropriate rate.[1]

Because this analysis requires the Court to review the rates prevalent in its jurisdictional vicinity, see Adcock–Ladd v. Sec'y of Treas., 227 F.3d 343, 350 (6th Cir. 2000), the cases from this District involving IDEA fee litigation serve as a natural

---

[1] Curiously, while Plaintiffs submitted Counsel Vilarin curriculum vitae, see Docket ## 1-3 & 1-4, they failed to include any documentation regarding Attorney Silvestriz's qualifications. While this may have been an oversight (a big one at that), the Court notes that Plaintiffs do lay out Attorney Silvestriz's qualifications in the brief; namely, that she is a "seasoned litigating attorney" and has been practicing special education law since 2009. Given that Defendants fail to raise any objections on this point, the Court will take Plaintiffs on their word.

starting point. See e.g. Zayas v. Puerto Rico, 451 F. Supp. 2d 310, 315 (D.P.R. 2006) (listing such cases). But among these, the Court shall accord them weight in proportion to how recently they were decided; after all, the fee must comport with the prevailing rate in the community. And this makes sense – rates are never static but rather vary according with the ebb and flow of the market (which changes depending on demand, supply and inflation, among other things).

To start with, the two cases Plaintiffs cite in support of the higher rate they seek are entirely distinguishable. In Zayas v. Puerto Rico, 451 F. Supp. 2d 310, 316 (D.P.R. 2006), this Court set the rate for attorney Alfredo Fernandez-Martinez at $200, which was on the higher end of the prevailing rates at the time, because of his "vast experience in education-related litigation," as well as his Master of Laws degree from Harvard with a focus on education issues. The other attorneys in the case (which had not submitted any evidence of their qualifications) were awarded $110 per hour. Zayas, in short, merely supports the notion that the appropriate rate for Plaintiffs falls somewhere between these numbers.

The other case cited is Gonzalez v. Puerto Rico Dep't of Educ., 1 F. Supp. 2d 111, 114 (D.P.R. 1998). It bears mentioning that this case is almost twenty years old and is somewhat of an outlier when compared to this District's subsequent decisions. There, the district court found it appropriate to set a split rate for Plaintiff's counsel at $175 for trial work, and $125 for office work. That higher rate was justified because the case had culminated with a four-day bench trial in federal court. Cf. Hernández-Rodríguez v. Commonwealth of P.R., 764 F. Supp. 2d 338 (D.P.R. 2011) ("litigating in federal court requires a different skill set and in many cases the passage of a separate federal bar"). Such a premium does not apply here, since the bulk of the fees claimed relate to litigation in the Puerto Rico administrative courts and comparatively simple fee litigation in this Court, rather than a full-blown federal trial.

After canvassing this District's decisions, the Court finds that $135 per hour is a reasonable rate for IDEA litigation in this jurisdiction, given the qualifications of the

attorneys in this case. As recently as 2015, this is the rate set for another very experienced attorney in this field. See e.g. Aponte-Ortiz v. Puerto Rico, Civ. No. 14-1218 (MEL), 2015 WL 5770033 at *2 (D.P.R. Sept. 30, 2015); accord Hernandez-Melendez v. Commonwealth of Puerto Rico, Civ. No 14-1493 (JAF), 2014 WL 4260811 at *2 (D.P.R. Aug. 29, 2014). With the rate settled, the Court moves on to examine the propriety of the hours claimed.

    ii. The Reasonableness of the Hours Claimed

"Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). Accordingly, it is the Court's duty to subtract "hours which were duplicative, unproductive, excessive, or otherwise unnecessary." Lipsett v. Blanco, 975 F.2d 934, 937 (1st Cir. 1992) (quoting Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 950 (1st Cir. 1984)).

Defendants first argue that Plaintiffs' counsel was inefficient in performing certain "menial" tasks. They contend that their use of "inconsistent" time-units "seem[s] unreasonable" because counsel logged between 6 and 18 minutes (.10, .20, and .30 hours) in "drafting and reviewing emails or orders." See Docket # 18, p. 6. Defendants say that these tasks should have taken, at most, 6 minutes. Considering that Defendants did not provide any concrete comparisons between these tasks, the Court has no basis to find that Plaintiffs' counsel was inefficient. From the time sheets submitted, the inference is that some tasks simply took more time than others, and counsel billed them accordingly.

In addition, the Court rejects Defendants' suggestion that drafting emails and reviewing orders are, per se, "menial" tasks. Rodriguez v. Puerto Rico, 764 F. Supp. 2d 338, 344-45 (D.P.R. 2011) (rejecting a similar argument). They still require the attorney to perform some work and apply his or her expertise, and so, are far removed from the "clerical or secretarial tasks," such as translations of documents and court

filings, that often warrant a reduction. Lipsett v. Blanco, 975 F.2d 934, 940 (1st Cir. 1992). Without more, Defendants' challenge on this front fails.

Defendants next argue that the entries for travel are excessive because Plaintiffs' counsel overestimated the time it takes to travel from the metro area to hearings in Ponce and Guayanilla. They say that travel to the former only takes "one hour each way," while the latter takes a bit more than that. Not only do Defendants fail to support this argument with any evidence, but personal experience strongly suggests otherwise. Travelling to each of these locations from the metro area, without running afoul of the speed limit, simply takes more time than what Defendants suggest. A simple search for travel times in Google Maps confirms this view. But more importantly, Plaintiffs are right that a diligent lawyer must ensure his or her presence at a hearing, and consequently must budget more than the amount of time it takes to drive to the location. In all, the Court finds that the hours logged by Plaintiffs' counsel for travel are reasonable and will be reimbursed as requested.

Defendants also claim that Plaintiffs' spent too much time performing legal research. Those 10.10 hours, Defendants argue, should be cut in half. But Defendants do not bother to explain just why Plaintiffs' legal research was excessive considering the context of the administrative case and the subsequent appeal, and why a 50% reduction, as compared to any other number, is appropriate. This lackadaisical argument is thus waived. See U.S. v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

Finally, Defendants argue that Plaintiffs' counsel employed a block-billing practice, and ask the Court to apply a 35% across-the-board reduction in the amounts claimed. Block-billing refers to the practice of consolidating different tasks in a single entry (such as a phone conversation and the draft of a motion), and then billing a number of hours for the entire block. This practice makes it difficult to ascertain how much time was spent working on each component of the block, and so is commonly used to cloak excessive or inefficient use of resources.

Courts do tend to remedy such practices with flat reductions in the total amount claimed. See e.g. Norkunas v. HPT Cambridge, LLC, 969 F.Supp.2d 184, 196–97 (D. Mass. 2013). But while Defendants copy a laundry list of entries in support of this argument, see Docket # 18-3, they fail to discuss how any of these constitute block-billing. After reviewing the logs, the Court is satisfied that the situation is quite the opposite. The fact that Plaintiffs' counsel may have provided additional details or broken down the individual components of a particular task – specifying that they conducted legal research on the doctrines of muteness and ripeness, for instance – does not mean that these entries have been billed in a block format. Compare, e.g., In re Volkswagen & Audi Warranty Extension Litig., 89 F. Supp. 3d 155, 177 (D. Mass. 2015) ("Many entries, for example, allocate 5 to 9 hour blocks of undifferentiated time to drafting dozens of e-mails."). Moreover, courts hesitate to impose global reductions where the block billing is "infrequent or relatively minor, or where most of the entries were reasonably recorded." In re Volkswagen & Audi Warranty Extension Litig., 89 F. Supp. 3d 155, 176 (D. Mass. 2015). Given Defendants' lack of effort to identify the alleged block entries with any precision, and that Plaintiffs' entries are reasonably detailed, the Court declines to impose a global penalty here.

      iii. Recovery for Costs and Expenses

Defendants complain that Plaintiffs request the reimbursement of expenses associated with the proceedings before this Court, but do not provide any documents that support this request. Accordingly, Defendants move the Court to deny recovery of these amounts. While the premise on which Defendants mount their argument is correct, the conclusion does not follow. As previously stated, the IDEA allows recovery of reasonable attorney's fees "as part of the costs to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B). While the recovery of both fees and costs must be supported by evidence, Plaintiffs need not have produced evidence of costs at this time. This is because the recovery of costs relating to this proceeding follows a different procedural route. Specifically, under Local Rule

54(b), Plaintiffs have 14 days from the entry of judgment in this case to file their bill of costs. Thus, Plaintiffs shall be allowed to present their bill of costs at that time.

Similarly, concerning the costs pertaining to the administrative proceedings and the subsequent appeal, Defendants objected that Plaintiffs had not presented sufficient documentation to support this request. In order to cure this deficiency, Plaintiffs filed a supplemental motion with the missing evidence. See Docket # 23. Nevertheless, because Plaintiffs failed to seek leave to file that motion, the Court struck it from the record. See Docket # 25. But after closer review, the Court reconsiders this decision. Defendants do not dispute that Plaintiffs are presumptively entitled to the recovery of such costs, and Plaintiffs eagerly submitted the relevant documentation. Moreover, they desisted from their claim for costs relating to courier or messenger services – a reduction of $315. The Court finds that it would exalt form over function to deny Plaintiffs recovery of these amounts on what amounts to a minor procedural blunder. Nevertheless, because the Court struck Plaintiffs' submission before Defendants had a chance to respond, the Court shall allow Defendants one week from the entry of this opinion to state their objections. Failure to respond shall constitute waiver.

Summing up, the Court finds that Plaintiffs are entitled to $29,106 in attorney's fees, which corresponds to the $135 rate multiplied by the 215.6 hours logged.[2] The Court shall determine the amount in costs related to the administrative proceedings once Defendants file their response.

This case warrants a final comment. As the Supreme Court has cautioned, "[a] request for attorney's fees should not result in a second major litigation." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). "Ideally, of course, litigants will settle the amount of a fee." Id. The parties, however, failed to take heed of this advice here, and chose to litigate this case to its conclusion. See e.g. Docket # 29. For Defendants, the

---

[2] The Court has not overlooked the third element of the analysis. It is just that, after reviewing the record, the Court is convinced there are no exceptional circumstances that warrant adjusting the fee upwards or downwards. Cf. Hensley v. Eckerhart, 461 U.S. 424, 434 (1983) (noting that this factor is particularly important where, for instance, "a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief."); see also id. at n.9. No further comment is needed.

sting of the award will no doubt be magnified by the fact that the amount of fees resulting from this federal case is greater than those incurred in litigating the administrative complaint. And for Plaintiffs, a judgment means only an entitlement to money, not a check in hand.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of September, 2016.

*s/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge